UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **ROSANNA BODINE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 4:18-CV-1447 PLC |
| | ) |
| **ANDREW M. SAUL**[1]**,** | ) |
| **Social Security Commissioner,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Rosanna Bodine seeks review of the decision of Defendant Social Security Commissioner Andrew Saul denying her application for Disability Insurance Benefits (DIB) under the Social Security Act.  Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

**I.      Background and Procedural History**

In July 2015, Plaintiff, who was born in January 1962, filed an application for DIB alleging that she was disabled as of September 15, 2010 as a result of: "lower extremity radiculopathy; degenerative disc disease, multiple levels; limited ability to sit, stand & walk; chronic fatigue due to pain; neck & spine fusion scheduled for 09/03/15."  (Tr. 126, 214-15)  The Social Security Administration (SSA) denied Plaintiff's claims in September 2015, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 131, 141-42)  The SSA granted Plaintiff's request for review and conducted a hearing in June 2017.  (Tr. 71-125)

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

1

In a decision dated February 7, 2018, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security At, at any time from September 15, 2010, the alleged onset date, through June 30, 2011, the date last insured[.]" (Tr. 10-18)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-6, 47-49)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

II.     **Evidence Before the ALJ**

Plaintiff testified that she had a high school education and previous work experience as a coordinator for pharmaceutical representatives, administrative assistant, and accounts payable clerk. (Tr. 77-86)  Plaintiff explained that she stopped working fulltime in 2004 because of her "back issues."  (Tr. 89)  In 2011, Plaintiff worked part-time for a temporary staffing agency, but left because  she "couldn't handle it, bending, and standing, and bending, you know, sitting, entering.  My hands  … just began to burn and hurt real bad and, you know, just my whole arms, my back mainly.  I just stopped, I couldn't do it."  (Tr. 91)

Plaintiff testified that, during the relevant period of 2009 through 2011, Dr. Young treated her back impairment with Advil and Tylenol, and Dr. Ghan administered injections, which helped for "[m]aybe an hour, couple hours."  (Tr. 93, 107)  Even though the injections did not relieve her pain, she continued receiving them because "I would try anything that would keep me from having a surgery at that point because of being a single mom." (Tr. 94)  Plaintiff also did physical therapy, underwent radiofrequency ablation, and saw a chiropractor.  (Tr. 105)  In addition to back pain, Plaintiff experienced neuropathy in her hands "off and on" between 2009 and 2011.  (Tr. 112)  In retrospect, Plaintiff believed that she needed surgery "[b]ack in 2010, 2011 when [she was] seeing Dr. Young[.]"  (Tr. 103)

Plaintiff stated that Dr. Stewart performed her first back surgery in 2013, but her pain did not improve and her lower extremity pain and numbness increased. (Tr. 96) Plaintiff subsequently switched orthopedic surgeons and underwent another back surgery in 2014 and neck surgery in 2015. (Tr. 97, 99) Plaintiff testified that, after those surgeries, which provided no relief, Plaintiff's hands "were going numb.  I was dropping stuff and it was like unbearable burning."  (Tr. 99) Plaintiff's orthopedic surgeon prescribed Lyrica and recommended injections, but Plaintiff "said no … I'm beyond injection."  (Tr. 100)  Eventually, Plaintiff's pain specialist referred her to orthopedic surgeon Dr. Raskas, who removed the hardware from Plaintiff's back  and "placed in a plate" in March 2017.  (Tr. 101)

Plaintiff explained that she had not yet noticed any benefit from the March 2017 back surgery.  (Tr. 101)  Plaintiff complained that the continued burning sensation in her hands was "really killing me … like when I'm driving I have to put this hand down and rotate to this.  I'm not able to hold the phone…."  (Tr. 102)  Plaintiff testified that Dr. Raskas planned to perform another back surgery later that year.  (Id.)

When the ALJ asked Plaintiff about her physical activity between 2009 through 2011, she stated that she would have to lie down for "about two hours" after "doing a[nything] physical, like mopping, cleaning a bathroom …, grocery shopping, running my children who were little still back and forth."  (Tr. 108-09)  Plaintiff affirmed that there were also days that she spent the entire day in bed due to pain, which intensified during storms and humid weather. (Tr. 110) Plaintiff testified that her husband would cook meals and mop, and her daughters "would help me a lot, groceries or whatever for me…."  (Tr. 111)  Plaintiff stated that sitting for long periods of time was also extremely painful.  (Tr. 114)

3

A vocational expert testified at the hearing. (Tr. 118-25) The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education and work experience "who is able to perform light work, never climb ladders, ropes or scaffolds, occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, avoid concentrated exposure to vibration." (Tr. 119) The vocational expert stated that such an individual could perform Plaintiff's past relevant work as an accounts payable clerk, administrative assistant, and order clerk, as well as the unskilled jobs of hand packer, production worker assembler, and housekeeper. (Tr. 120)

When the ALJ limited the first hypothetical individual to sedentary work, the vocational expert stated that the accounts payable and order clerk positions would still be available, as well as the jobs of surveillance system monitor, hand packer, and worker assembler. (Tr. 120-21) The vocational expert testified that those positions would remain available if the hypothetical individual required a "sit/stand option defined as allowing a person at 30-minute intervals throughout the day to briefly stand or stretch and move about but otherwise remain on task." (Tr. 121) However, a sit/stand option that allowed the hypothetical individual to walk around, "meaning leave the work station for one or two minutes" every thirty minutes, would preclude competitive employment. (Tr. 123)

In regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her statement of material facts that the Commissioner admitted. [ECF Nos. 27, 32-1] The Court also adopts the facts contained in the Commissioner's statement of additional facts because Plaintiff did not dispute them. [ECF No. 32-2]

### III. Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1).

4

The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id. Second, the claimant must establish that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. at § 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quotation omitted). At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Subpart P, Appendix 1. Id. at 404.1520(d).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). RFC is defined as "the most a claimant can do despite her limitations." Id. (citing 20 C.F.R. § 404.1545(a)(1)).

At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past

relevant work.  20 C.F.R. § 404.1520(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011).  If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  20 C.F.R § 404.1520(g);  Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012).  If the claimant cannot make an adjustment to other work, then she will be found to be disabled.  Id. at § 404.1520(a)(4)(v).

## IV.   ALJ's Decision

Before undertaking the five-step analysis, the ALJ addressed Plaintiff's submission of additional written evidence eleven weeks after the hearing and eight weeks after Plaintiff's counsel informed the ALJ that the record was complete. (Tr. 10-13)  The ALJ found that Plaintiff provided "no valid reason" for the late submission of medical records dated 2004, 2005, and 2008, and therefore declined to admit those records.  (Tr. 12)  The ALJ further noted that the excluded evidence "falls more than 12 months from either side of the relevant time period between the alleged onset date (September 15, 2010) and the date last insured (June 30, 2011)."  (Tr. 13)

Next, the ALJ addressed Plaintiff's request that additional interrogatories be submitted to the medical expert.  (Tr. 13)  The ALJ considered each of Plaintiff's four proposed interrogatories and denied their submission because they were either duplicitous and/or "invite[d] mere speculation and conjecture."  (Id.)  Finally, the ALJ denied Plaintiffs request for a supplemental hearing because Plaintiff's counsel did not submit the request until October 19, 2017, which was "well after any arguable deadline."  (Tr. 13-14)

6

The ALJ then applied the analysis set forth in 20 C.F.R. § 404.1520(a) and determined that Plaintiff: (1) did not engage in substantial gainful activity during the period of time from her alleged onset date of September 15, 2010 through her date last insured of June 30, 2011; (2) had the medically determinable impairment of "degenerative changes in lumbar spine"; and (3) did not have a severe impairment or combination of impairments. (Tr. 16)  After reviewing Plaintiff's testimony and medical records, the ALJ found that, while her "medically determinable impairment could have been reasonably expected to produce the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 17)  The ALJ therefore concluded that Plaintiff was not disabled between September 15, 2010 and June 30, 2011. (Tr. 18)

V.  **Discussion**

Plaintiff claims the ALJ erred in failing to: (1) admit "relevant and material evidence"; (2) "explain why the records which existed prior to the [date last insured] failed to show [P]laintiff had a severe impairment"; and (3) properly evaluate the credibility of Plaintiff's subjective complaints. [ECF No. 26]  In response, the Commissioner asserts that the ALJ properly declined to admit the evidence in question and evaluated the severity of Plaintiff's alleged impairment. [ECF No. 32]

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A

court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  Exclusion of Evidence

Plaintiff's primary argument is that the ALJ improperly excluded from the record certain medical records that Plaintiff's counsel submitted after the hearing.  [ECF No. 26]  More specifically, Plaintiff claims that the ALJ erred in excluding the results of MRIs performed in 2004, 2005, and 2008 ("Exhibit 27F") and a CT dated September 2005 ("Exhibit 19F") because Plaintiff established an "unusual, unexpected, or unavoidable circumstances beyond [her] control" that prevented her from submitting the evidence timely.  Plaintiff further asserts that the excluded evidence would have affected the outcome of her case.  The Commissioner counters that the ALJ properly excluded the evidence pursuant to SSA regulations and, even if the ALJ erred in applying 20 C.F.R. § 404.935, "remand is not required, as none of the evidence rejected by the ALJ is probative to Plaintiff's case." [ECF No. 32]

8

The ALJ excluded Plaintiff's untimely submitted medical records pursuant to 20 C.F.R. § 404.935, known as the "five-day rule."  Pursuant to this rule, if a claimant wants the ALJ to consider written evidence at the hearing, the claimant must submit or inform the ALJ about the evidence no later than five business days before the date of the scheduled hearing. 20 C.F.R. § 404.935(a).  If a claimant fails to comply with this requirement, the ALJ "may decline to consider or obtain the evidence," unless the claimant did not submit or inform the ALJ about the evidence because the claimant:  (1) was misled by an action taken by the SSA; (2) the claimant had a "physical, mental, or linguistic limitation(s) that prevented [her] from informing [the ALJ] about or submitting  the evidence earlier"; or (3) "some other unusual, unexpected, or unavoidable circumstance beyond [her] control prevented [the claimant] from informing the [ALJ] about or submitting the evidence earlier."  20 C.F.R. § 404.935(b).

The regulations provide the following examples of "unusual, unexpected, or unavoidable circumstances" that might excuse the untimely submission of evidence:

> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
> (ii) There was a death or serious illness in your immediate family;
> (iii) Important records were destroyed or damaged by fire or other accidental cause; or
> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935(b)(3)(i)-(iv).  In providing guidance regarding the five-day rule, the SSA explained that it "included appropriate exceptions to the 5-day requirement to ensure fairness when a claimant or his or her representative actively and diligently seeks evidence but is unable to obtain it."  *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 90987-01, 2016 WL 7242991, at * (SSA Dec. 16, 2016).

9

See also Wasen A. v. Saul, No. 18-CV-3242 SRN/LIB, 2020 WL 823095, at *5 (D. Minn. Jan. 31, 2020).

Where, as here, a claimant neither submitted nor informed the ALJ about evidence within five days of the hearing, "the 5-day rule gives the ALJ discretion to admit or exclude the late-submitted evidence." Owsley v. Saul, No. 4:18-CV-1328-SRC, 2020 WL 999203, at *7 (E.D. Mo. Mar. 2, 2020) (citing 20 C.F.R. §§ 404.935(a), 416. 1424(a)).  Accordingly, the Court reviews the ALJ's decision to exclude Exhibits 19F and 27F for an abuse of discretion.  Id. (citing Passmore v. Astrue, 533 F.3d 658, 665-66 (8th Cir. 2008)).

Plaintiff argues that the ALJ erred in refusing to admit the untimely submitted evidence pursuant to section 404.935(b)(3)'s exception for "unusual, unexpected, or unavoidable circumstances" beyond the claimant's control.[2] Plaintiff explains that Dr. Young ordered the MRIs and CT contained in Exhibits 19 F and 27F and Plaintiff's counsel submitted multiple records requests to Dr. Young.  Plaintiff's counsel also requested records from Watson Imaging, where Plaintiff believed Dr. Young had sent her for the imaging.  Plaintiff states that she and her counsel "did not know anything outstanding existed and were under the impression these tests no longer existed." [ECF No. 26 at 6]

The record reflects that, although Plaintiff's counsel represented Plaintiff since at least March 2016, she did not seek medical records from several of Plaintiff's treating sources until less than one month before the June 20, 2017 hearing.  (Tr. 10)  On June 7 and 9, 2017, Plaintiff's counsel sent the ALJ two letters informing him that she had recently requested medical records from seven health care providers and stated that she did "not know whether [the records] will be

---

[2] The Court notes that, in her brief in support of the complaint, Plaintiff cites 20 C.F.R. § 405.331(c)(3).  Effective January 17, 2017, the SSA enacted the five-day rule and removed part 405 from the regulations.  81 FR 90987-01, 2016 WL 7242991 (SSA Dec. 16, 2016).

10

available at least 5 business days before the scheduled hearing." (Tr. 313-14) The ALJ received and admitted into evidence medical records that Plaintiff submitted on various days between June 9 and June 23. (Id.)

At the hearing, he agreed to leave the record open for fourteen additional days to allow Plaintiff's counsel to secure and submit Plaintiff's medical records from Dr. Young because Plaintiff's counsel represented that those records would be pertinent to the relevant time period. (Tr. 75-76) On June 30, 2017, the ALJ received medical records from Dr. Young, as well as Dr. Gahn and the 2005 lumbar CT (Exhibit 19F).[3] (Id.) The ALJ admitted the records from Dr. Young, but did not admit the records from Dr. Gahn or Exhibit 19F because he "has never been informed that these records existed or that they had been requested in compliance with 20 CFR 404.935(a) and (b)" (Tr. 11) On July 7, 2017, Plaintiff's counsel wrote the ALJ a letter stating: "I have now submitted all of the records in this case. Since development of the record is complete, please issue your decision at your convenience." (Tr. 315)

On July 31, 2017, the ALJ directed a medical source statement (MSS) and interrogatories to a medical expert, Dr. Krishnamurthi, seeking his assessment of Plaintiff's physical condition from September 15, 2009 through June 30, 2011. (Tr. 1180-90) Dr. Krishnamurthi submitted his written responses on August 14, 2017, concluding that Plaintiff did not have a medically determinable impairment prior to June 30, 2011, the date last insured. (Tr. 11-12, 1194-1203)

On August 18, 2017, the ALJ presented Dr. Krishnamurthi's opinion to Plaintiff and provided Plaintiff ten days to submit: comments, a statement, or additional records to the ALJ; written questions to Dr. Krishnamurthi; or a request for a supplemental hearing. (Tr. 316-17) On

---

[3] Plaintiff does not challenge the ALJ's decision to exclude the records from Dr. Gahn.

11

August 28, Plaintiff's counsel requested an additional ten days to respond because she was "waiting on additional evidence to be provided by claimant." (Tr. 319)

Plaintiff's counsel submitted Exhibit 27F on September 5, 2017.[4]  (Tr. 1204-09)  In a letter dated October 10, the ALJ:  acknowledged his receipt of Exhibit 27F; noted that the imaging studies contained therein were "neither submitted nor identified in accordance with 20 CFR 404.935(a)"; and provided Plaintiff's counsel ten days to "demonstrate whether any of the circumstances elaborated in 20 CFR 404.935(b) … apply." (Tr. 320)

Plaintiff responded by letter dated October 17, averring that she obtained "rebuttal evidence in response to" the medical expert's opinion that Plaintiff "had no medically determinable impairment prior to her [date last insured]" because that "opinion raised an issue wherein the evidence became relevant including MRIs from 2004, 2005, and 2008." (Tr. 324)  Without explaining how or where Plaintiff found the records, Plaintiff's counsel stated only that "the claimant was able to obtain copies of the testing, which had not been previously released to us" and she and Plaintiff "did not believe the testing existed and thought it had been destroyed based upon information from [Plaintiff's] providers." (Tr. 324-25)  Plaintiff's counsel concluded her letter requesting, for the first time, a supplemental hearing. (Tr. 325)

In his decision, the ALJ reviewed his correspondence with Plaintiff's counsel and concluded:  "[T]here is no valid reason given for the late submission of medical records, dated

---

[4] Along with Exhibit 27F, Plaintiff's counsel submitted four interrogatories for the medical expert. (Tr. 322-23)  Plaintiff's counsel wrote:
> This [new] evidence predates the claimant's alleged onset date but since the Medical Expert was unable to identify a severe impairment prior to the claimant's date last insured, I feel this evidence is important and despite requesting this evidence from the providers, including Dr. Young, was not provided with this in my request and I was not able to obtain the information from the doctor.

(Tr. 322)

12

2004, 2005 and 2008 respectively, well in advance of the hearing and before representing the record as complete." (Tr. 12)  The ALJ reasoned:

> The representative has been representing the claimant since 2016.  Many of the records were not ordered until 12 days before the hearing, and the claimant was still searching for records [on] August 28, 2017.  Additional time was granted at the hearing for submission of records from Dr. Young.  The undersigned gave the claimant's attorney every reasonable opportunity to submit additional records.  The claimant's attorney was given additional time to explain why the evidence should be admitted in accordance with 20 CFR 404.935(b).  The attorney's explanation, however, failed to address this critical question.

(Tr. 12-13)  The ALJ therefore denied Plaintiff's request for submission of the late evidence. (Tr. 13)

Based on review of the records, the Court agrees that Plaintiff failed to demonstrate that an "unusual, unexpected, or unavoidable circumstance beyond [her] control" prevented her from timely submitting the records contained in Exhibits 19F and 27F.  In her October 2017 letter addressing the late submission of those records, Plaintiff's counsel wrote:  "After receiving the opinion of Dr. Krishnamurthi, the claimant was able to obtain copies of the testing…."[5]  While this statement suggests that the imaging was discovered through some effort by Plaintiff, Plaintiff's counsel did not explain why those efforts were not made earlier.  Nor did Plaintiff's counsel explain when, where, or how Plaintiff obtained the documents.  As the ALJ stated in his decision, without dates and details describing Plaintiff's efforts to obtain the records, "it is impossible to measure whether due diligence was exercised[.]"[6]  (Tr. 12)  The Court finds that the ALJ did not

---

[5] Plaintiff provides some clarification in her brief in support of the complaint, stating that, after receiving the opinion of the medical expert, Plaintiff "was able to find within her own records and other paperwork some testing performed prior to her" alleged onset date. [ECF No. 26 at 7]

[6] Plaintiff's counsel does little to clarify the circumstances surrounding the untimely submission of evidence, stating merely, "claimant was able to find within her own records and other paperwork some testing performed prior to her" alleged onset date. [ECF No. 26 at 7]  Presumably, the imaging reports were among Plaintiff's "records and other paperwork" prior to the hearing and could have been timely submitted to the ALJ.

abuse his discretion in declining to admit the untimely records under the "unavoidable circumstances" language of 20 C.F.R. § 404.935(b)(3).

Plaintiff asserts that "the response from the [medical expert] brought up issues and the need for earlier evidence that did not appear to be relevant to the case until this point in time." [ECF No. 26 at 8] To the extent Plaintiff argues that Exhibit 27F contained admissible "rebuttal evidence," the Court rejects this characterization. "[T]he submission and consideration of post-hearing evidence are common in social security disability cases," especially evidence intended to rebut testimony, such as that of the vocational expert, that "cannot be anticipated prior to the hearing." McClesky v. Astrue, 606 F.3d 351, 254 (7th Cir. 2010) (quotation omitted). Dr. Krishnamurthi reviewed Plaintiff's medical records and assessed her ability to perform work-related activities during the relevant time period. While his opinion might have highlighted the lack of evidence relating to Plaintiff's condition between September 2009 and June 2011, it did not raise any issues or present information that could not have been anticipated prior to the hearing. Plaintiff's assertion that Dr. Krishnamurthi's opinion "brought up issues and the need for earlier evidence that did not appear to be relevant to the case until this point in time," is disingenuous given that Plaintiff's condition prior to the date last insured was the very issue before the ALJ.

Even if the ALJ erred in excluding the imaging records, the alleged error did not affect the outcome of Plaintiff's case. According to Plaintiff, "[t]he most relevant piece of evidence which was not admitted by the ALJ is the MRI from Dr. Young at 27F dated 2/18/08, which shows significant pathology prior to the plaintiff's alleged onset date."[7] [ECF No. 26 at 8] However,

---

[7] The summary of the February 2008 imaging report states: "Segmental spinal stenosis occurs at the L405 disc space in the presence of fluid distention of the facet joint capsule and bulging of the L405 disc. Right lateral recess stenosis now affects the L5-S1 disc space level in the presence of bulging disc into exiting foramen more on the right side than left." (Tr. 1206-07)

14

while the record before the ALJ did not contain the imaging report, it contained information derived from the report.  Indeed, in Dr. Young's treatment notes of February 27, 2008, he wrote: "LUMBAR MRI:  Films reviewed.  There is mild disc space narrowing at L4-5, mild narrowing at L5-S1.  There is moderate facet arthrosis at L4-5 bilateral." (Tr. 1038 (emphasis in original)). The ALJ specifically referenced this notation in his decision. (Tr. 17)  Given that the results of the MRI were in the record and considered by the ALJ, the Court finds that the report itself would not have changed the ALJ's decision.  The ALJ did not commit reversible error in refusing to admit the untimely submitted records contained in Exhibits 19F and 27F.

    C.  Severe impairments

Plaintiff claims the ALJ failed to explain how Plaintiff's medical records created before the date last insured supported his determination that her back impairment was non-severe.[8] [ECF No. 26]  In response, the Commissioner asserts that the ALJ properly evaluated the severity of Plaintiff's impairments and explained why the evidence did not support a finding of severe impairments at step two of the sequential evaluation.  [ECF No. 32]

At step two of the five-step evaluation process, the ALJ determines whether the claimant had a severe impairment.  Hepp v. Astrue, 511 F.3d 798, 803 n.4 (8th Cir. 2008).  To demonstrate that an impairment is severe, a claimant must show that she has: (1) a medically determinable impairment or combination of impairments, which (2) significantly limits her physical or mental ability to perform basic work activities, without regard to age, education, or work experience.  See 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1521(a).  An impairment or combination of

---

[8] Plaintiff also argues that the ALJ failed "to explain the evidence which supports the conclusions reached and determination of RFC." [ECF No. 26 at 9]  However, in performing the five-step evaluation, the ALJ determined at step two that Plaintiff did not have a severe impairment and, therefore, did not formulate an RFC.  See Page, 484 F.3d at 1043.

15

impairments is not severe if it does "not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

A review of the record reveals that Plaintiff received treatment for back pain in 2004 and 2008. Plaintiff presented no medical records from 2009, the year of Plaintiff's alleged onset of disability, and only one medical record from 2010. In the 2010 record, which was created by Plaintiff's primary care physician, there is no mention of back pain. (Tr. 389) In May 2011, one month before Plaintiff's date last insured, she presented to the ER for chest pain and complained of "chronic right lower back pain" over many years. (Tr. 682) There is no evidence that Plaintiff received treatment for back pain during the relevant time period.

Here, the ALJ reviewed Plaintiff's medical records and recognized that Plaintiff had degenerative changes in the lumbar spine. (Tr. 16) The ALJ noted that "from 2002 to 2008, the claimant was seen briefly on a few occasions by Dr. Young for complaints of back pain." (Tr. 17) The ALJ cited Dr. Young's February 2008 reference to Plaintiff's MRI of the same month, and noted that Dr. Young "described the findings as mostly mild abnormalities." (Tr. 17) Additionally, clinical findings from that time period were unremarkable, reflecting that Plaintiff had normal strength, muscle tone, reflexes, and gait, and negative straight leg-raising tests. (Id.) The ALJ therefore concluded that Plaintiff's back impairment was non-severe. (Tr. 18)

The Court finds that the records supports the ALJ's determination that Plaintiff's impairment was non-severe. Although Plaintiff received treatment for back pain in 2004 and 2008, the record reflects no treatment between the September 2009 alleged onset date and the June 2011

date last insured.  The absence of medical records from the relevant time period documenting complaints of back pain or treatment for that condition supports the ALJ's conclusion that Plaintiff's back pain was not a severe impairment.  See Whitman, 762 F.3d at 706.

Furthermore, Plaintiff testified that, during that time period, she treated her symptoms with Advil, Tylenol, and hot and cold compresses.  See Hepp, 511 F. 3d at 807 (moderate, over-the-counter medication for pain does not support allegations of disabling pain); Loving v. Dept. of Health & Human Servs., 16 F.3d 967, 971 (8th Cir. 1994) (holding that use of over-the-counter medication to deal with pain is inconsistent with complaints of disabling pain).  Plaintiff's conservative treatment consisting of over-the-counter medication, heat, and cold, undermined her allegations of disabling pain.  Based on the above, the Court finds that substantial evidence supported the ALJ's finding that Plaintiff's impairment was not severe.

### D.  Credibility

Finally, Plaintiff alleges without explanation or citation to the record that "the ALJ failed to make a proper credibility determination and failed to consider the factors set forth in Polaski." [ECF No. 26 at 11]  Plaintiff neither developed this argument nor cited authority in support.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  Ingram v. Astrue, No. 4:09-CV-1358 TIA, 2011 WL 1226957, at *11 (E.D. Mo. Mar. 29, 2011) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).  The Court therefore does not address Plaintiff's claim that the ALJ erred in assessing her credibility.

### VI.  Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

                                                     PATRICIA L. COHEN
                                                     UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of May, 2020